IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANIELLE DAVIS,

      Plaintiff,

      v.                            Case No. 2:21-cv-02142-HLT

PHK STAFFING LLC, d/b/a
HOLLYWOOD CASINO AT
KANSAS SPEEDWAY,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff Danielle Davis brings claims for disability discrimination and retaliation under the Americans with Disabilities Act Amendments Act ("ADAAA") against Defendant PHK Staffing LLC. Doc. 1. Defendant moves for summary judgment. Doc. 41. Because Plaintiff fails to show that she was a qualified individual under the Act and otherwise fails to make a prima facie case or show Defendant's actions were a pretext for discrimination, the Court grants Defendant's motion for summary judgment.

I.      BACKGROUND[1]

Plaintiff has suffered from severe asthma since 2009. PSOF 1. Plaintiff's asthma attacks are often allergy induced. PSOF 3. Plaintiff started working for Defendant in July 2019 as a table games supervisor and dealer. Doc. 40 at 2-3. Defendant's "core business service" is table games, and unscheduled absences by table games dealers can result in insufficient staffing and inoperative table games. DSOF 52. Defendant has a no-fault attendance policy that "expresses Defendant's

---

[1]    The facts are either undisputed or construed in favor of Plaintiff as the nonmoving party. Additional facts are included throughout the order for clarity.

requirement that employees be present and ready to work for the entirety of each scheduled shift." DSOF 5. Employees accrue "points" under the policy for "tardiness, absence, leaving early, and absence without calling in to notify Defendant." DSOF 6. An employee is subject to termination if she accumulates twelve attendance points in a rolling twelve-month period. *Id.* The following absences were not considered an incident under the policy during Plaintiff's employment:

- Approved PTO day
- Jury Duty
- Bereavement
- Approved Leave of Absence (FMLA, Personal, Military)
- Absence due to work-related injury
- Disciplinary Absence (Suspension)
- Company initiated Early Out due to business reasons.

PSOF 12. Defendant's bereavement policy allows employees to take three days of leave without attendance points for an immediate family member's death and one day of leave for an extended family member's death. DSAF 1. Defendant also maintained an accident policy that set forth the requirements for workers compensation leave after a workplace accident. DSAF 2.

On October 20, 2019, Davis had an asthma attack at work and had to leave early. PSOF 20. Davis got two attendance points: one for the "early out" and another for leaving early on a "Black Out Date." *Id.* Three days later, Plaintiff spoke with Defendant's Human Resources ("HR") Generalist, Stephanie Beck, to request disability accommodation paperwork for asthma and allergies. DSOF 8; Doc. 40 at 3; Doc. 42-3 at 6. Plaintiff was absent from work again due to asthma on October 27, and she got 1.5 points. PSOF 21. Plaintiff picked up her disability accommodation request form and healthcare provider verification form two days later. DSOF 8; Doc. 42-3 at 6.

On November 1, Plaintiff submitted a request for an accommodation to Defendant's HR department. Doc. 40 at 3. Plaintiff requested the following accommodation: "[t]hat if Danielle Davis calls in or leaves early due to severe asthma attack or allergies she will not be pointed or it

held against her and the points she got for 10/20 and 10/27 be removed since she left work early due to her asthma and called in 10/27 for asthma attack." DSOF 9. On November 14, 2019, Plaintiff submitted a doctor's note signed by Dr. Russell to the human resources department stating "Danielle Davis was seen at our office on Nov 3rd due to an asthma flare-up. She may need days off from work in the future due to chronic asthma and other flare-ups." Doc. 40 at 3. Dr. Russell diagnosed Plaintiff with temporary severe asthma. Doc. 42-3 at 10-11. Plaintiff's condition was expected to last 14 to 21 days. *Id.* at 11.

Beck determined that she needed more information from Dr. Russell in determining whether an accommodation was warranted. *See* DSOF 20. The day after Plaintiff submitted her doctor's note, Beck called Dr. Russell's office. Doc. 40 at 3; DSOF 21. The next day, Beck faxed her questions to Dr. Russell along with copies of job descriptions for Plaintiff's positions because the doctor's office told her that it would not provide information over the phone. Doc. 40 at 3; DSOF 21. Beck faxed the following questions to Dr. Russell:

> 1) whether Davis' severe asthma was a temporary or permanent condition;
> 2) whether Dr. Russell recommended that Davis use a nebulizer while at work;
> 3) whether it was possible for Davis to use a nebulizer while at work; and
> 4) whether Dr. Russell had any recommendations on how [Defendant] could help Davis complete the functions of her job.

PSOF 25. Dr. Russell's office never responded to the fax. DSOF 23.

Beck and her supervisor told Plaintiff that they needed additional information to determine whether Plaintiff's accommodation request could be granted. DSOF 24. Plaintiff told Beck that her doctor wanted to perform some tests, so that could be the cause of the delay. DSOF 25. Beck made multiple attempts to contact Dr. Russell's office again. DSOF 27, 28. On January 10, 2020,

Dr. Russell faxed Beck the same verification form he completed on November 1, 2019, without any additional information. Doc. 40 at 3. On February 6, 2020, Plaintiff's request for accommodation was denied. DSOF 34. Plaintiff accrued enough attendance points for termination by February 17. DSOF 35. Specifically, Plaintiff accumulated thirteen attendance points in about seven months. DSOF 36. In addition to her October absences, Plaintiff claims that her absences on November 3, 2019, and February 17, 2020, were related to her asthma. PSOF 54. Therefore, Plaintiff claims she got 5.5 of her 13 points from disability-related absences. *Id.*

On February 17, when she realized that she had too many attendance points, Plaintiff went to Defendant's HR department offices to speak with Beck. DSOF 37. Defendant believes that Plaintiff resigned at the meeting while Plaintiff alleges that she was terminated at the meeting. DSOF 38-39. Plaintiff's employment with Defendant ended on February 17. Doc. 40 at 2.

After the February 17 meeting, Plaintiff claims she telephoned Defendant's corporate offices and spoke with HR Director Sharon Pennington. PSOF 42. Plaintiff claims that Pennington told her that "if she went to her doctor and had him fill out the paperwork correctly," then perhaps Plaintiff could be reinstated. *Id.* But Pennington was not involved in Plaintiff's alleged termination because "[t]he employment decision was already made. [Plaintiff] left her employment." PSOF 52. Plaintiff claims that during a follow-up call between her and Pennington, Pennington asked her whether she smoked cigarettes and when Davis confirmed that she smoked, Pennington told Plaintiff that she caused her own health conditions, and that Defendant was unable to accommodate her. PSOF 53. Plaintiff received her right to sue from the EEOC in February 2021, and this timely suit followed. Doc. 40 at 2.

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

Plaintiff asserts three ADAAA claims against Defendant: (1) terminating her employment due to her disability; (2) failure to accommodate her disability; and (3) retaliating against her by terminating her after she sought a disability accommodation. Doc. 40 at 13-14. The Court first addresses whether Plaintiff is a "qualified individual" under the Act because it is a requirement for her first two claims. *See Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013) (prima facia discrimination claim requires showing one is qualified to perform the essential functions of the job with or without reasonable accommodation); *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020) (employee must make initial showing that she is disabled, otherwise

qualified, requested a plausibly reasonable accommodation, and the employer refused to accommodate).[2]

### A.      Discrimination and Failure-to-Accommodate Claims

Plaintiff's discrimination and failure-to-accommodate claims under the ADAAA fail for several reasons.

### 1.   Both Claims Fail Because Plaintiff Is Not a Qualified Individual

To sustain discrimination and failure-to-accommodate claims under the ADAAA, Plaintiff must show that she is a "qualified individual." 42 U.S.C. § 12111(8); *see also Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118-19 (10th Cir. 2004). A "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." § 12111(8). A court determines whether an individual is qualified by examining (1) whether the individual can perform the essential functions of the job without accommodation; and (2) whether any reasonable accommodation by the employer would enable the individual to perform those functions. *Mason*, 357 F.3d at 1118.

> The employee bears the burden of showing her ability, with or without reasonable accommodation, to perform the essential functions of her job. But it is the employer who bears the burden of demonstrating that a job function is essential because, after all, the employer is in the best position to do so.

*Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 877 (10th Cir. 2021) (citations omitted).

Here, Defendant argues that an essential function of Plaintiff's job as a table games supervisor and dealer was regular and reliable attendance. Doc. 42 at 10. Plaintiff argues that there

---

[2]   Defendant also argues that Plaintiff's retaliation claim fails because Plaintiff is not a qualified individual under the ADAAA. Doc. 42 at 12-14. But, as the Tenth Circuit recently noted, an ADAAA retaliation claim is unlike a discrimination clam in that it only requires that a plaintiff show a reasonable and good-faith belief that she was a qualified individual with a disability. *Lamm v. Devaughn James, LLC*, 2022 WL 353500, at *4 (10th Cir. 2022); *see also* 42 U.S.C. § 12203(a). The Court therefore addresses Plaintiff's retaliation claim separately.

is a question of fact as to whether regular and reliable attendance was an essential function of her job because Defendant's attendance policy allows unscheduled absences for bereavement and for workers compensation leave. Doc. 46 at 28-30. Defendant responds by arguing that allowing leave for workplace injuries is required under Kansas public policy law. Doc. 49 at 13-14. Defendant also provides evidence that the bereavement policy only allows three days of unplanned leave for the death of an immediate family member and one day of leave for a distant family member. DSAF 1. Thus, Defendant argues that exceptions to its no-fault attendance policy for workplace injury and bereavement do not undermine its assertion that regular and reliable attendance is an essential function of Plaintiff's position. Doc. 49 at 13-15.

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." *Mason*, 357 F.3d at 1119 (quoting 29 C.F.R. § 1630.2(n)(1)). Job functions can be essential for several reasons, including "because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2). Essential function evidence includes the employer's judgment, written job descriptions, the amount of time spent performing the function, the consequences of not requiring the incumbent to perform the function, and the work experience of past or current incumbents in the job or similar jobs. § 1630.2(n)(3).

Defendant has met its burden to show that regular and reliable attendance is an essential function of Plaintiff's position. It is undisputed that table games are a core part of Defendant's business and that Defendant may fail to staff its game tables when dealers do not show up. Unplanned absences make it especially difficult for Defendant to operate. Thus, Defendant's judgment and the consequences of not requiring Plaintiff to have regular and reliable attendance support it being an essential function. Furthermore, Plaintiff points to no current or former

employees who have received leniency under the attendance policy. Plaintiff merely points to workers compensation and bereavement leave within the policy itself as evidence that regular and reliable attendance is not essential.

The Ninth Circuit rejected such an argument in *Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233 (9th Cir. 2012). There, the Ninth Circuit affirmed the district court's summary judgment holding for the defendant on the plaintiff's reasonable accommodation claim. *Id.* at 1235. The plaintiff was a neonatal intensive care unit ("NICU") nurse with fibromyalgia who sought an accommodation from the hospital that employed her "that would have allowed her an unspecified number of unplanned absences from her job." *Id.* The hospital had an attendance policy that "sanctioned five unplanned absences" in a rolling twelve-month period. *Id.* Each absence, regardless of length, counted as one occurrence. *Id.* Additionally, unplanned absences such as family medical leave, jury duty, and bereavement leave were not counted towards this limit. *Id.* The plaintiff argued that because the hospital could work around five unplanned absences, it could accommodate her for an unspecified number of absences. *Id.* at 1240.

The Ninth Circuit reasoned that the plaintiff's approach "ignores recognition of employer needs and would gut reasonable attendance policies." *Id.* It held that reliable and dependable attendance was still an essential function of the plaintiff's job. *Id.* at 1240-41. While an unscheduled absence in this case may not be as dire as a NICU nurse failing to show up for her shift, physical attendance by a table games manager and dealer is still essential to Defendant's business.

Because Defendant meets its burden to show that regular and reliable attendance is an essential function of Plaintiff's position, Plaintiff bears the burden of showing her ability, with or without reasonable accommodation, to perform the essential functions of her job.

Plaintiff's only suggested accommodation in the record is that two of her prior asthma-related absences be removed from her file and that any subsequent asthma-related absences be excused. This is asking for complete excusal from Defendant's attendance policy. In this case, that amounts to asking for excusal from an essential function of Plaintiff's job, which is not reasonable. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1051 (10th Cir. 2017).[3]

Caselaw supports this result. "[A] regular and reliable level of attendance is a necessary element of most jobs." *Mason*, 357 F.3d at 1120 (quoting *Tyndall v. Nat'l Educ. Centers Inc.*, 31 F.3d 209, 213 (4th Cir.1994)) (noting the Fourth Circuit's approach in determining whether physical attendance was an essential job junction). In *Mason*, the Tenth Circuit affirmed the district court and held that the plaintiff could not perform the essential functions of her job with or without a reasonable accommodation. 357 F.3d at 1125. There, the plaintiff had requested the ability to work from home. *Id.* at 1119. But the Tenth Circuit determined that physical attendance at work was an essential function of the plaintiff's job as a service coordinator. *Id.* at 1120. Just so here. Plaintiff cannot perform any function of her job, essential or otherwise, unless she is reliably present at work. Therefore, Plaintiff fails to support either a disability discrimination or a failure-to-accommodate claim.[4]

---

[3]    Plaintiff only intended to use intermittent ADA leave until she was eligible for FMLA leave. PSOF 19. But Plaintiff points to no evidence that she ever communicated this to Defendant as part of her request. Nor did she ever state how many absences she would need until she was eligible for FMLA leave. Plaintiff only claims that she asked Beck about the availability of FMLA leave when she first started working for Defendant, and Beck told her that she was not eligible for FMLA leave until she had worked there for a year. PSOF 16-17. Beck also told her that there was an ADA policy available at that time. PSOF 18. Thus, this case is distinguishable from *Dansie v. Union Pacific Railroad*, 42 F.4th 1184 (10th Cir. 2022), where the plaintiff presented evidence that he had requested up to five days off per month until he could obtain FMLA leave. *Id.* at 1195-96. There was a genuine issue of material fact about the open-endedness of the plaintiff's request in *Dansie* that is not present here.

[4]    Plaintiff also argues that Defendant should have engaged in an interactive process to find a reasonable accommodation. Doc. 46 at 35-36. Plaintiff needed to establish that she was a qualified individual with a disability before Defendant was required to engage in an interactive process. *See Mason*, 357 F.3d at 1124 n.4.

### 2.     Disability Discrimination Claim Also Fails Under *McDonnell Douglas*

In the alternative, Plaintiff's disability discrimination claim fails for another reason. Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first raise a genuine issue of material fact as to each element of her prima facie case. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989 (10th Cir. 2021). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for terminating her. *Id.* at 990. If the defendant does so, the burden shifts back to the plaintiff to show the defendant's reason for termination was pretextual. *Id.*

A plaintiff establishes a prima facie case under the ADAAA by showing that "(1) she is disabled within the meaning of the [ADAAA], (2) she is qualified to perform the essential functions of the job with or without accommodation, and (3) she suffered an adverse employment action because of her disability." *Id.* at 989-90. Defendant argues that Plaintiff fails to show a causal connection between her alleged termination and her disability. Doc. 42 at 17-18. Defendant argues in the alternative that Plaintiff cannot establish pretext. *Id.* at 19-21. Plaintiff argues that had she incurred her final absence because of a death in the family, she would not have received an attendance point, and thus such evidence can prove discrimination and pretext. *See* Doc. 46 at 39.

Even assuming Plaintiff had enough affirmative evidence to show causation, Defendant has a nondiscriminatory reason for terminating Plaintiff: she accumulated thirteen attendance points in seven months. Plaintiff has no evidence that the application of Defendant's attendance policy to her was pretext for discrimination. To show pretext, a plaintiff must show "weaknesses, contradictions, or inconsistencies in [a defendant's] reason[] such that a reasonable jury could find

[it] unworthy of belief." *Edmonds-Radford*, 17 F.4th at 991. Usually, a plaintiff may show pretext in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that . . . [the plaintiff] was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (citation omitted). Plaintiff has not shown that she did not accumulate too many points, that Defendant acted contrary to its policy, or that Plaintiff was treated differently from a similarly situated employee. Plaintiff shows <u>no other</u> employee who received leniency for unscheduled absences, much less an employee who could rack up an open-ended number of unscheduled absences. Allowing up to three days of bereavement leave does not allow a reasonable jury to conclude that Defendant's reason for termination was a pretext. Such logic would allow the evisceration of reasonable attendance policies.

Plaintiff argues that the differences between Beck's initial summary of events versus her final summary of events "suggests that she was trying to fabricate evidence . . . to justify her actions to her superiors." Doc. 46 at 39. Beck did revise a summary of events she had drafted for her superiors after Plaintiff's employment ended. PSOF 48. The largest change in the summary was the addition of the following language: "[d]uring many of these conversations [Plaintiff] was contentious and unprofessional in her tone and demeanor." PSOF 49. This statement has no bearing on Defendant's attendance policy or its application. No reasonable jury could find pretext

from this statement or any of the other minor edits Beck made to her summary. Therefore, Plaintiff also fails to show that Defendant enforcing its attendance policy was pretext for discrimination.[5]

### 3.    Failure to Accommodate Claim Also Fails the Modified Framework

Plaintiff's failure-to-accommodate claim also fails for an alternative and independent reason. Plaintiff claims Defendant violated the ADAAA by failing to accommodate her disability. Doc. 46 at 30-37. Defendant argues that Plaintiff has not requested a plausibly reasonable accommodation. Doc. 42 at 15-17. The *McDonnell Douglas* framework does not apply to failure-to-accommodate claims. *Punt*, 862 F.3d at 1050. But under the applicable modified burden-shifting framework, a plaintiff must make an initial showing that (1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) the defendant refused to accommodate the disability. *Aubrey*, 975 F.3d at 1005.

When an employee asks for a "reasonable accommodation" that exempts her from an essential function, the essential function and reasonable accommodation analyses run together. *Samper*, 675 F.3d at 1240. For the same reasons the Court determined regular and reliable attendance was an essential function of Plaintiff's position, Plaintiff's open-ended request for leave is not reasonable. An accommodation that allows a plaintiff to "miss work whenever she felt she needed to and apparently for so long as she felt she needed to" is unreasonable on its face. *Id.* (citation omitted); *see also Unrein*, 993 F.3d at 878 (holding a flexible schedule was not a reasonable accommodation when an essential function of the job was physical presence).

---

[5] Plaintiff mentions in passing that HR Director Pennington told her that she could not be accommodated because she smoked cigarettes and caused her own health conditions. Doc. 46 at 38-39. Pennington denies this conversation ever took place. Doc. 49-4. It does not matter. Regardless, it is undisputed that (1) this alleged conversation was <u>after</u> Plaintiff's termination, and (2) Pennington had <u>no role</u> in Plaintiff's employment ending. *See* PSOF 52-53. Therefore, these facts, without more, have no bearing on the decision to terminate Plaintiff. *Edmonds-Radford*, 17 F.4th at 992 (holding a later offer to reinstate the plaintiff with even more accommodations did not show pretext by decisionmakers <u>at the time of the termination</u>).

Plaintiff tries to reframe her request as "two potential accommodations." Doc. 46 at 31. Namely, (1) that Defendant excuse her disability-related absences in October 2019, and (2) that Defendant excuse her disability-related absences moving forward. *Id.* But this is an inaccurate parsing of her request. Plaintiff wanted a blank check for absences. This is not reasonable. And even considered separately, her requests are not reasonable.

First, the ADAAA does not require retroactive relief. *Dewitt*, 845 F.3d at 1316 ("The ADAAA does not require employers to reasonably accommodate an employee's disability by overlooking past misconduct—irrespective of whether the misconduct resulted from the employee's disability."). A request for a retroactive accommodation is unreasonable. *Id.* Therefore, Defendant cannot be liable for failing to excuse Plaintiff's October absences before she submitted her accommodation request paperwork on November 1. Plaintiff claims Beck told her it was possible to get her October attendance points removed. Doc. 46 at 32. Defendant has provided evidence that Beck was mistaken. Doc. 42-6 at 3. But even if Beck were correct that Defendant could hypothetically remove attendance points in some instances, "a denied request for retroactive leniency cannot support an accommodation claim." *Dewitt*, 845 F.3d at 1318.

Second, Plaintiff's open-ended request for potentially unlimited leave for her asthma going forward was also unreasonable. Therefore, Plaintiff's never requested a plausibly reasonable accommodation regardless of how the Court parses her claims, and her failure-to-accommodate claim still fails.

### B.    Retaliation for Protected Activity Claim

Third, and finally, Plaintiff claims that Defendant retaliated against her in violation of the ADAAA by terminating her employment when she sought an accommodation for her disability. Doc. 40 at 14. Defendant argues that Plaintiff fails to establish her prima facie case because she

cannot establish causation. Doc. 42 at 18-19. Defendant argues in the alternative that Plaintiff cannot show its reason for termination was pretext. *Id.* at 19-20. Under the *McDonnell Douglas* framework, a plaintiff bears the burden of making a prima facie retaliation case. *Edmonds-Radford*, 17 F.4th at 994. Plaintiff must prove (1) she engaged in protected activity, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Id.* If a defendant provides a nondiscriminatory reason for the adverse employment action, the plaintiff must establish the reason was a pretext for discrimination. *Id.*

A causal connection requires "evidence of circumstances that justify an inference of retaliatory motive." *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (citation and emphasis omitted). "The Supreme Court has likened this burden to a showing of 'but-for causation.'" *Id.* (citation omitted). Thus, the evidence "must be based on more than mere speculation, conjecture, or surmise." *Id.* More than temporal proximity is required to show causation when the adverse action is taken three months or longer after the protected activity. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Here, Plaintiff was terminated over three and a half months after she requested an accommodation. Therefore, Plaintiff must provide something more than the timing of her termination to show that but-for her disability, she would not have been terminated. Plaintiff argues that because Beck said that her past absences could be excused if she had her medical verification form in, there is a question of fact as to whether she was terminated due to a lack of paperwork or because she requested an accommodation. Doc. 46 at 39-40. This is impermissible speculation. Again, the ADAAA does not require retroactive accommodation. *Dewitt*, 845 F.3d at 1316. And besides, the undisputed facts show that Ms. Beck repeatedly asked Dr. Russell what Defendant

could do to help Plaintiff complete the functions of her job, but Dr. Russell's office never provided an answer. Plaintiff provides <u>no facts</u> to show that "but for" her request for an accommodation, she would not have been terminated.

And even if Plaintiff had made a prima facie case, she has failed to show that Defendant's legitimate reason for terminating her (her chronic absenteeism) is unworthy of credence or a pretext. She again fails to come forward with evidence from which a jury could find for her on the third step of the *McDonnell Douglas* framework. Thus, her retaliation claim fails at this point also.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 41) is GRANTED. Judgment shall be entered in favor of Defendant.

IT IS SO ORDERED.

Dated: October 5, 2022                            /s/  *Holly L. Teeter*
                                                   HOLLY L. TEETER
                                                   UNITED STATES DISTRICT JUDGE